UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DR. ALICE M. PENDLETON, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:15-CV-736 |
| | § | |
| PRAIRIE VIEW A&M UNIVERSITY, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM & ORDER

Plaintiff Dr. Alice M. Pendleton claims that she was discriminated against on account of her disability and her gender by her former employer, Defendant Prairie View A&M University. Defendant has moved to dismiss the claims that are based on the Americans with Disabilities Act and Texas Labor Code. After considering the submissions of the parties and the applicable law, the Court **DENIES AS MOOT** Defendant's first Motion to Dismiss (Doc. No. 6) and **GRANTS** Defendant's second Motion to Dismiss (Doc. No. 9).

### I.    BACKGROUND[1]

Plaintiff Dr. Alice M. Pendleton worked as an Adjunct Professor in the Mechanical Engineering Department at Defendant Prairie View A&M University ("Prairie View") from January 2009 to May 2014. 1st Am. Compl. ¶¶ 12-13. She holds a Ph.D. in mechanical engineering from Texas A&M University. *Id.* ¶ 27. At the time of her employment, Plaintiff was the only female professor in the Mechanical Engineering Department at Prairie View. *Id.* ¶ 21.

In 1983, Plaintiff experienced a stroke that has left her with significant physical

---

[1] For the purposes of a motion to dismiss, the Court takes the factual allegations pleaded in the First Amended Complaint (Doc. No. 7) as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

limitations, particularly with respect to long periods of walking, lifting and other manual tasks. *Id.* ¶¶ 3, 14, 16. While she was working at Prairie View, Plaintiff made several requests for accommodation of her disability. In particular, she asked that she be given use of a golf cart to help her move around campus because of her walking limitations. *Id.* ¶ 14. Plaintiff believed that golf carts were available and used by other staff members at the college. *Id.* ¶ 19. In response, Plaintiff was told to use Dean Kendall Harris's golf cart "when it was available," but was rarely actually able to use it. *Id.* ¶ 14. Plaintiff also asked to be assigned a teaching assistant to aid her with using certain teaching equipment, including the blackboard and Power Point, because of her physical limitations. *Id.* ¶ 16. She was provided with a teaching assistant for only a brief period. *Id.* Plaintiff also asked for parking near the building where her classes met, and was denied that accommodation as well. *Id.* ¶ 17. Prairie View failed to engage in a good-faith conversation with Plaintiff regarding her need for accommodations. *Id.* ¶ 18.

Plaintiff also believes that she was discriminated against in other ways, both on account of her disability and her gender. Her teaching assignments and work hours — and therefore her salary — were reduced. *Id.* ¶ 15. She was also denied promotions, including promotion to a teaching position in a manufacturing process lab. *Id.* ¶ 23. She was also denied a pay increase. *Id.* ¶ 24. The President of Prairie View, Dr. George Wright, told Plaintiff's husband that Dean Harris had observed Plaintiff's ambulatory difficulties and strongly suggested that she should retire. *Id.* ¶ 25. She did so in May 2014. *Id.* ¶ 26.

Plaintiff filed an EEOC charge making the above allegations on or about September 16, 2014. *Id.* ¶ 10. After receiving a right-to-sue letter from the agency, Plaintiff filed the instant lawsuit in March 2015. (Doc. No. 1.) Defendant moved to dismiss Plaintiff's original complaint in May. (Doc. No. 6.) Shortly after Defendant's motion was filed, Plaintiff filed her First

Amended Complaint, asserting claims under Title VII, the Texas Labor Code, the Americans with Disabilities Act (ADA), and the Rehabilitation Act. (Doc. No. 7.) Defendant then filed the instant motion, which seeks dismissal of Plaintiff's ADA and Texas Labor Code claims. (Doc. No. 9.)[2]

## II.   LEGAL STANDARD

A court may dismiss a complaint for a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief — including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, consistent with Rule 8(a), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The plausibility standard "is not akin to a 'probability requirement,'" though it does require more than simply a "sheer possibility" that a defendant has acted unlawfully. *Id.* at 678. Thus, a pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

---

[2] Because the First Amended Complaint was filed after Defendant's original Motion to Dismiss, the Court hereby **DENIES AS MOOT** the first Motion to Dismiss. (Doc. No. 6.)

### III.   ANALYSIS

#### A.  Americans with Disabilities Act Claim

Plaintiff has brought a claim for disability discrimination pursuant to Title II of the Americans with Disabilities Act. 1st Am. Compl. at 7. Defendant seeks dismissal of this claim because Title II of the ADA does not create a cause of action for employment discrimination by state entities such as Prairie View.

Title II of the ADA, which applies to "Public Services,"[3] provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. § 12132. The Fifth Circuit has not yet addressed the question of whether this provision prohibits discrimination in employment by a public entity. The Supreme Court has also noted the issue without deciding it. *See Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 360 n.1 (2001). However, other circuits have split on whether this language can support an employment discrimination claim. *Compare Bledsoe v. Palm Beach County Soil and Water Conservation Dist.*, 133 F.3d 816 (11th Cir. 1998) (Title II encompasses employment discrimination) *with Brumfield v. City of Chicago*, 735 F.3d 619, 626 (7th Cir. 2013) (Title II does not provide a cause of action for employment discrimination); *Elwell v. Oklahoma*, 693 F.3d 1303, 1308 (10th Cir. 2012) (same); *Zimmerman v. Oregon Dep't of Justice*, 170 F.3d 1169, 1178-79 (9th Cir. 1999) (same).

Only the Eleventh Circuit has expressly held that an employment discrimination claim

---

[3] Title I of the ADA contains the law's express provisions on employment discrimination. However, the Supreme Court has held that suits for money damages against state government entities cannot proceed under Title I because such suits are barred by the states' sovereign immunity pursuant to the Eleventh Amendment. *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356 (2001).

against a public entity may proceed under Title II. *See Bledsoe*, 133 F.3d at 820-24. There were two primary bases for the court's opinion. First, the court looked at the broad language of Title II, which prohibits otherwise qualified individuals from a disability from being "subject to discrimination by" any public entity. 42 U.S.C. § 12132. On its face, this would seem to include employment discrimination. Legislative history also indicates that Title II was intended to include the employment provisions that are applicable to private-sector employers under Title I. *See* H.R. Rep. No. 101-485(II), at 84 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 367 ("[t]he Committee intends, however, that the forms of discrimination prohibited by [Title II] be identical to those set out in the applicable provisions of [Title I]"). Consistent with this evidence of legislative history, Department of Justice regulations have interpreted Title II to incorporate Title I's provisions regarding employment discrimination. *See* 28 C.F.R. § 35.140. On this basis, the Eleventh Circuit found that a claim for employment discrimination on account of a disability could survive under Title II. One court in this district has accepted the Eleventh Circuit's reading of Title II to prohibit employment discrimination. *See Wagner v. Texas A&M University*, 939 F. Supp. 1297, 1309 (S.D. Tex. 1996).

While there is some force to the Eleventh Circuit's arguments, the Seventh, Ninth and Tenth Circuits have all rejected this reading of Title II. All of these courts have viewed Title II as containing two distinct clauses: no otherwise eligible individual with a disability may be (1) "excluded from participation in or be denied the benefits of the services, programs or activities of the public entity" by reason of such disability, or (2) "subjected to discrimination by" a public entity by reason of disability. *Brumfield*, 735 F.3d at 626; *Elwell*, 693 F.3d at 1036; *Zimmerman*, 170 F.3d at 1174. Because employment is not a "service, program, or activity" of a public entity, these courts — including the Eleventh Circuit — have uniformly held that the first provision

does not prohibit employment discrimination. *Brumfield*, 735 F.3d at 626-27 (citing cases); *Bledsoe*, 133 F.3d at 821-22. The second clause, which prohibits all "discrimination," might appear on first reading to include employment discrimination. However, Title II applies only to "qualified individual[s] with a disability." 42 U.S.C. § 12132. The statute defines "qualified individual with a disability" for purposes of Title II to mean "an individual with a disability who … *meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity*." 42 U.S.C. § 12131(2) (emphasis added). The Ninth Circuit noted that "[o]btaining or retaining a job is not 'the receipt of services,' nor is employment a 'program or activity provided by a public entity.'" *Zimmerman*, 170 F.3d at 1176. The entirety of Title II thus only applies to "service[s], program[s], or activit[ies]" provided by public entities — i.e., the "outputs" of those entities — and the Seventh, Ninth and Eleventh circuits have all agreed that employment does not fall within that category. *Id.* at 1177.

The *Brumfield*, *Elwell*, and *Zimmerman* courts also looked to the structure of the ADA for further support for the position that Title II does not apply to public employment. Title I of the ADA is labeled "Employment," and includes a variety of specific employment-related provisions. *Zimmerman*, 170 F.3d at 1176. For instance, the definition of "qualified individual with a disability" for Title I is specific to an employment context: it means "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8). In contrast, the Title II definition pertains to receipt of services or participation in programs, as discussed above. Also, at the time of drafting, Congress further intended that Title I should cover the employment practices of state and local

6

governments. *Zimmerman*, 170 F.3d at 1177.[4] If Title II also covered employment, then Title I's provisions regarding public employers would be superfluous. *Id.* In addition, public employees would be permitted to evade the administrative exhaustion requirements of Title I by pursuing a claim under Title II. *Id.* at 1177-78.

Moreover, the Supreme Court's reasoning in *Board of Trustees of University of Alabama v. Garrett* strongly suggests that the Court would find the application of Title II to public sector employment to violate the states' sovereign immunity.[5] In *Garrett*, the Court considered whether Congress had the power under § 5 of the Fourteenth Amendment to abrogate the states' sovereign immunity and permit the recovery of monetary damages for employment discrimination against individuals with disabilities by state entities. The Court held that, in order to act under § 5 to protect workers with disabilities, Congress must show "a history and pattern of unconstitutional employment discrimination by the States against the disabled." *Id.* at 368. The legislative record of the ADA showed "half a dozen examples" of unequal treatment of individuals with disabilities, but the Court held that "these incidents taken together fall far short of even suggesting the pattern of unconstitutional discrimination on which § 5 legislation must be based." *Id.* at 370. This is true whether the prohibition is housed in Title I or Title II of the ADA. Accordingly, this Court finds it likely that even if Title II could be interpreted to contain a prohibition on employment discrimination, the states' sovereign immunity would prohibit private plaintiffs' recovery of money damages from state entities.

The proper interpretation of Title II is a difficult question. The prohibition on

---

[4] In *Garrett*, the Supreme Court invalidated Title I as applied to state governments.
[5] The parties do not dispute that Prairie View is an arm of the state for sovereign immunity purposes. *See Sherrod v. Prairie View A&M University*, No. H-10-cv-1858, 2011 WL 843936, at *2-3 (S.D. Tex. 2011).

"discrimination" in the second clause of the statute initially invites a broad reading, and that appears to be consistent with legislative history and subsequent regulatory interpretations. The Court is persuaded, however, that, when read in the context of the structure of the law, Title II unambiguously applies only to "services, programs, [and] activities," and that employment does not fall into that category. Furthermore, even if Title II did encompass public employment, it would raise significant Eleventh Amendment concerns under *Garrett*. Accordingly, Plaintiff's claim under Title II of the ADA is **DISMISSED**.

### B. Texas Labor Code Claim

Defendant argues that Plaintiff's Texas Labor Code claim is also barred by Eleventh Amendment guarantees of sovereign immunity. The Eleventh Amendment prohibits federal courts from exercising jurisdiction over suits against non-consenting states unless Congress validly abrogates immunity. U.S. Const. amend. XI; *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 53-55 (1996). There is no suggestion that Congress has abrogated sovereign immunity with respect to claims under the Texas Labor Code. Texas also has not consented to suit in federal court on claims under the Labor Code. *See Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 332 (5th Cir. 2002). Plaintiff does not respond to this argument in her response to Defendant's Motion, and the Court concludes that Prairie View is correct that the Texas Labor Code claim must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendant's second Motion to Dismiss is **GRANTED**. The prior motion to dismiss is **DENIED AS MOOT**. The existing Docket Control Order still applies to Plaintiff's remaining claims.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on the 5th of August, 2015.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE