United States District Court
Southern District of Texas
**ENTERED**
December 07, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DR. ALICE M. PENDLETON, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:15-CV-736 |
| | § | |
| PRAIRIE VIEW A&M UNIVERSITY, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM AND ORDER

Pending before the Court is Defendant Prairie View A&M University's Motion for Summary Judgment (Doc. No. 37). After considering the Motion, the responses thereto, and all applicable law, the Court determines that the Motion should be denied.

**I. BACKGROUND**

Plaintiff Alice Pendleton brings claims of disability discrimination[1] against Defendant Prairie View A&M University under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213. (Doc. No. 7.)

The undisputed facts are as follows. Plaintiff has had total joint replacements in both of her hips and her right shoulder. (Doc. No. 37 at 4; Doc. No. 46 at 2.) As a result, she has mobility impairments that prevent her from walking long distances and limit her range of motion in her right arm. *Id*. In 2009, Defendant hired Plaintiff to serve as an adjunct assistant professor in the Mechanical Engineering Department and to work as a research assistant on the Center for Radiation Engineering and Science for Space Exploration ("CRESSE") project under a five-year grant from NASA. (Doc. No. 37 at 3; Doc. No. 46 at 14.) Plaintiff worked on the CRESSE

---

[1] Plaintiff initially brought a claim of sex discrimination under Title VII of the Civil Rights Act of 1964. (Doc. No. 7 ¶¶ 39-43.) She has since abandoned this claim, so only her disability discrimination claims remain. *See* Doc. No. 46 at 2 n.1.

1

project until funding for the project ran out. Kirby Dep. 15:25-19:1.

To accommodate Plaintiff's mobility impairments, Defendant provided Plaintiff a disabled parking decal. (Doc. No. 37 at 4; Doc. No. 46 at 5.) In addition, on two days, Defendant provided a golf cart and driver to transport Plaintiff between buildings.[2] (Doc. No. 37 at 4; Doc. No. 46 at 8.) Plaintiff requested additional accommodations, including daily use of a reserved golf cart and driver to transport Plaintiff between buildings, permission for Plaintiff and/or Plaintiff's husband to drive her car on pedestrian sidewalks and park next to building entrances, permission to use alternative entrances to University buildings, and provision of a teaching assistant. (Doc. No. 37 at 4; Doc. No. 46 at 5, 10-13.) All of these accommodations were denied. *Id*.

On February 10, 2014, Plaintiff emailed her supervisor, Dr. Jianren Zhou, to inquire about available teaching positions. (Doc. No. 46-21.) In his response, Dr. Zhou stated that there were four positions available teaching Manufacturing Processes Lab courses. *Id*. He added that the positions required "operation of heavy machinery, machine shop (some heavy equipment) management, and machining and fabrication operations, etc." *Id*. Plaintiff subsequently met with Dr. Zhou to discuss the position but ultimately did not take the position. Pendleton Dep. at 182:8-16.

On March 24, 2014, Plaintiff wrote a letter of resignation. (Doc. No. 37 at 3; Doc. No. 46 at 25.) Her resignation was effective on May 31, 2014. *Id*. Following her resignation, Plaintiff contacted Dr. Zhou to inquire about available positions at the University. (Doc. No. 37 at 5; Doc. No. 46 at 26.) Dr. Zhou told Plaintiff that there were no positions available. *Id.*

---

[2] Defendant also alleges that it accommodated Plaintiff's disability by providing her with a lightweight laptop and a temporary office during the summer. (Doc. No. 37 at 16.) Plaintiff does not dispute that Defendant provided these things, but she does dispute that they were accommodations. (Doc. No. 46 at 13-14.)

2

## II. LEGAL STANDARD

Summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The court can consider any evidence in "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Crawford*, 234 F.3d at 902.

The party moving for summary judgment bears the burden of demonstrating the absence of a genuine dispute of material fact. *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001). If the moving party meets this burden, the non-moving party must go beyond the pleadings to find specific facts showing that a genuine issue of material fact exists for trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is appropriate if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

## III. ANALYSIS

### A. Rehabilitation Act claim

To establish a prima facie case of discrimination under the Rehabilitation Act, a plaintiff must show that she: (1) was an individual with a disability; (2) was otherwise qualified for the position; (3) worked for a program or activity receiving federal financial assistance; (4) suffered an adverse employment action; and (5) was denied the benefits of her employment or subjected to discrimination solely because of her disability. *See Pinkerton v. Spellings*, 529 F.3d 513, 519

(5th Cir. 2008); *Washburn v. Harvey*, 405 F.3d 505, 508 (5th Cir. 2007). The Rehabilitation Act incorporates the standards used in ADA claims, which are subject to the Title VII burden-shifting analysis. *Daigle v. Liberty Life Ins. Co.,* 70 F.3d 394, 396 (5th Cir. 1995). The remedies, procedures, and rights of Title VII govern Rehabilitation Act claims. *Pinkerton*, 529 F.3d at 517; 29 U.S.C. § 794a(a)(1).

### i. Adverse employment action

Defendant argues that Plaintiff cannot establish the adverse employment actions that she alleges: constructive discharge and discriminatory compensation. (Doc. No. 37 at 6-13.) For the reasons explained below, there remain genuine disputes as to material facts regarding both allegations. Therefore, Defendant is not entitled to summary judgment.

### 1. Constructive discharge

In order to demonstrate constructive discharge, a plaintiff must prove that "working conditions [were] so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Bourque v. Powell Electrical Mfg. Co.*, 617 F.2d 61, 65 (5th Cir. 1980). Factors a court may consider include: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; and (6) offers of early retirement or continued employment on terms less favorable than the employee's former status. *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007); *See also Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994). A plaintiff is not required to prove specific intent, that is, that her employer imposed intolerable working conditions with the goal of forcing her to resign. *Bourque*, 617 F.2d at 65. To prevail on a constructive discharge claim, plaintiff must demonstrate a greater amount of harassment than

that required for a hostile work environment claim. *Brown v. Kinney Shoe Corp*, 237 F.3d 556, 566 (5th Cir. 2001).

In the instant case, there is no allegation that Plaintiff was demoted or that she was assigned menial or degrading work. Plaintiff does, however, allege reductions in salary and job responsibilities; badgering, harassment, or humiliation calculated to encourage her resignation; and offers of early retirement or continued employment on less favorable terms. As explained below, Plaintiff has presented sufficient evidence to raise a genuine dispute of material fact as to reductions in salary and job responsibilities and badgering, harassment or humiliation. Therefore, Defendant is not entitled to summary judgment on Plaintiff's constructive discharge claim.

### a. Reductions in salary and job responsibilities

Plaintiff alleges that she experienced two reductions in job responsibility, resulting in salary reductions. First, Plaintiff points to her removal from the CRESSE project. (Doc. No. 46 at 28.) According to Kelvin Kennard Kirby, who also worked on the CRESSE project, the grant that funded the project was intended to last, and did last, only five years. Kirby Dep. 15:25-17:23. Once the funding ran out, all but three of the project's staff ceased work on the project. *Id*. at 17:12-19:1. Those who remained on the project were engaged in supervising students, writing reports, and closing out the project. *Id*. Defendant argues that Plaintiff's removal from the project was an anticipated and non-discriminatory reduction in force and does not support her charge of constructive discharge. (Doc. No. 37 at 7.) Defendant also points out that other faculty and staff were moved off the CRESSE project at the same time that Plaintiff was. (Doc. No. 48 at 2 n.2.) Although these facts raise doubts about Plaintiff's allegations of discrimination, Defendant does not completely eliminate the possibility that Plaintiff's removal from the CRESSE project was discriminatory. Based on the evidence presented, a reasonable factfinder could conclude that

5

Defendant's decision not to include Plaintiff in the small number of project staff that remained after funding ran out was discriminatory. Summary judgment on this issue would therefore be inappropriate.

Plaintiff's second alleged reduction in job responsibility occurred when she was removed from teaching a second class in the Mechanical Engineering department because no golf cart was available to transport her to that class. (Doc. No. 46 at 28-29.) This resulted in a reduction in salary, since adjunct professors are paid based on the number of teaching assignments. *Id*. Defendant does not refute the allegation that Dr. Zhou's reason for removing Plaintiff from the class was related to her mobility impairment. Instead, Defendant counters that Plaintiff's overall salary increased over the course of her employment and that Plaintiff had other teaching opportunities. (Doc. No. 37 at 13; Doc. No. 48 at 2.) These allegations, even if true, do not prevent a reasonable factfinder from concluding that Plaintiff experienced a discriminatory reduction in job responsibilities (with a corresponding salary reduction).

Defendant argues that the alleged reductions in job responsibilities and salary do not support Plaintiff's constructive discharge claim because she failed to apply for several available tenure-track positions. (Doc. No. 37 at 9-13.) However, Plaintiff's failure to apply for those positions does not bar her claim if such an application would have been a futile gesture because of a policy of discrimination. *See Teamsters v. United States*, 431 U.S. 324, 363-66 (1977); *Claiborne v. Ill. Cent. R.R.*, 583 F.3d 143, 150 (5th Cir. 1978). Plaintiff argues that such is the case here. (Doc. No. 46 at 30.) Plaintiff points to the fact that Dr. Zhou removed one of her classes because of her mobility impairment. *Id.* She also points to the fact that Dr. Zhou discouraged Plaintiff from pursuing a position teaching a Manufacturing Processes lab course because it required heavy lifting. *Id*. Whether or not these allegations are sufficient to prove a

6

policy of discrimination, such that Plaintiff's application for additional positions would have been futile, is a question of fact.[3] Therefore, Defendant is not entitled to summary judgment on this issue.

### b. Badgering, harassment, or humiliation

Plaintiff alleges at least three instances of harassment that contributed to her constructive discharge. First, Plaintiff alleges that Kendall Harris, the Dean of the College of Engineering, told University President Dr. George Wright that he had observed Plaintiff's mobility impairments and, based on her disability, he strongly suggested that she retire. (Doc. No. 7 ¶ 25.) Plaintiff alleges that President Wright subsequently told Plaintiff's husband about Dean Harris's remarks. *Id*. There is a fact question as to whether these comments were made; Dean Harris and President Wright both deny them. (Doc. No. 37 at 8.) The second alleged instance of harassment was Dr. Zhou's decision to remove Plaintiff from teaching a second class in the Mechanical Engineering department because no golf cart was available to transport her to that class. (Doc. No. 46 at 28-29.) Third, Plaintiff alleges that Dr. Zhou refused to consider her for a position teaching a Manufacturing Processes lab course because it required heavy lifting. (Doc. No. 48 at 29.) Plaintiff testified that, in a meeting to discuss the position, "all [Dr. Zhou] could talk about was lifting. He just made me feel like I couldn't do the job because I wasn't physically able to do it." Pendleton Dep. at 182:8-16.[4]

---

[3] Defendant argues that Plaintiff cannot meet her burden regarding a policy of discrimination, citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398 (5th Cir. 1999). In that case, the Fifth Circuit rejected plaintiff's futile gesture argument where a supervisor told the plaintiff that she would "probably be better off" in her old position. *Shackelford*, 190 F.3d at 406. Whereas the supervisor's comments in *Shackelford* were subject to multiple interpretations, here Plaintiff has alleged multiple supervisor comments about, and employment decisions based on, her disability. Therefore, *Shackelford* cannot resolve the issue of whether it would have been a futile gesture for Plaintiff to apply for certain tenure-track positions.

[4] Defendant does not deny that Dr. Zhou made the alleged comments. Instead, Defendant alleges

Defendant argues that, even if the alleged comments were made, they do not rise to the level of compelling a reasonable person to resign. *Id.*[5] Defendant further argues that Plaintiff "could have resolved [the alleged badgering, harassment, or humiliation] herself with the Dean or her supervisor, Dr. Zhou," particularly in light of the fact that she had previously received positive feedback and had never been threatened with termination. *Id.* at 8-9. However, Plaintiff's ability or opportunity to address these issues with her supervisors is immaterial to the question of whether she experienced harassment. Moreover, Defendant has not shown that, as a matter of law, the alleged statements from Dean Harris and Dr. Zhou would not compel a reasonable person to resign. As such, this issue should be resolved at trial, not at summary judgment.

### c. Offer of early retirement or continued employment on unfavorable terms

Plaintiff argues that Dean Harris's alleged strong suggestion that she retire constituted "an ultimatum that, in effect, forced her to end her long-standing employment at the University." (Doc. No. 46 at 30.) She states that, because Dean Harris and President Wright were in positions of great influence within the University, she felt pressured to resign based on Dean Harris's comments. *Id.* at 30-31. As noted above, a reasonable factfinder could find Dean Harris's alleged comments constituted badgering, harassment, or humiliation. However, no reasonable factfinder

---

that those positions were already filled by the time Plaintiff inquired. (Doc. No. 37 at 12-13.) Plaintiff disputes this, and the email from Dr. Zhou is ambiguous as to whether the positions were filled. (Doc. No. 46 at 30; Doc. No. 46-21.) Because this fact is in dispute, and viewing the evidence in the light most favorable to the non-movant, the Court assumes for purposes of Defendant's Motion for Summary Judgment that the positions were not filled at the time Plaintiff inquired.

[5] Defendant cites *Shryer v. Univ. of Tex. Sw. Med. Ctr. at Dallas*, 587 Fed. App'x 151 (5th Cir. 2014), in which the plaintiff's supervisor expressed frustration at the plaintiff's inability to carry out her duties due to her mobility impairment and said, "one of us has got to go." (Doc. No. 37 at 8; Doc. No. 48 at 3.) This comment is not similar enough to Dean Harris's or Dr. Zhou's alleged comments to foreclose a finding in Plaintiff's favor as a matter of law.

could find that Dean Harris's comments constituted an offer of early retirement or continued employment on unfavorable terms. Therefore, this factor should not be counted toward Plaintiff's claim of constructive discharge.

### d. Evidence that working conditions were tolerable

Apart from challenging the factors listed above, Defendant makes several additional arguments to refute Plaintiff's claim of constructive discharge. Defendant notes that Plaintiff continued to work at the University for five years despite the alleged harassment and reductions in job responsibilities and salary. (Doc. No. 37 at 7, 10.) Defendant further notes that Plaintiff wrote positive things about her experience in her retirement letter and that Plaintiff inquired about teaching positions after her retirement. *Id*. Once again, Defendant's arguments raise questions about Plaintiff's allegation of constructive discharge, but do not rise to such a level that no reasonable factfinder could find for Plaintiff. As such, they do not entitle Defendant to summary judgment.

### 2. Compensation

In addition to her constructive discharge claim, Plaintiff alleges that she suffered an additional adverse employment action in the form of discriminatory compensation. Plaintiff cites her removal from the CRESSE project and from teaching a second class in the Mechanical Engineering department due to her lack of golf cart. (Doc. No. 46 at 31.) Plaintiff's compensation claim has significant overlap with her constructive discharge claim, in that she alleges that Defendant's removal of Plaintiff from certain positions within the University and refusal to consider her for others resulted in lower compensation. For the reasons stated above, Plaintiff has raised a genuine dispute as to material facts regarding these employment decisions. Therefore, summary judgment on Plaintiff's compensation claim is not appropriate.

### ii. Causation

Defendant next argues that, even if Plaintiff can demonstrate one or more adverse employment actions, she cannot satisfy the Rehabilitation Act's causation standard. In order to obtain relief under the Rehabilitation Act, a plaintiff must prove that she experienced an adverse employment action "*solely* by reason of her…disability." 29 U.S.C. § 794(a) (emphasis added). The Fifth Circuit has held that this is a higher causation standard than the one articulated in Title VII of the Civil Rights Act of 1964. *Soledad v. U.S. Dep't of Treasury*, 304 F.3d 600, 503-04 (5th Cir. 2002). Whereas a Title VII plaintiff is only required to show that her protected status was a "motivating factor" for an employment decision, even though other factors were present, *see* 42 U.S.C. § 2000e-2(m), a Rehabilitation Act plaintiff must show that her disability was the sole factor. *Id*.

Since *Soledad*, some district courts have held that a plaintiff fails to meet her burden on causation where she alleges another form of illegal discrimination, such as in a Title VII claim. *See, e.g.*, *Shah v. Univ. of Tex. Sw. Med. Sch.*, 54 F. Supp.3d 681, 685 (N.D. Tex. 2014) (plaintiff who alleged discrimination on the basis of both disability and ethnicity could not prevail under the Rehabilitation Act). Therefore, Defendant argues, Plaintiff's Title VII allegations foreclose her from recovering under the Rehabilitation Act. (Doc. No. 37 at 13-14.) Without weighing in on whether a Rehabilitation Act plaintiff may recover when alleging multiple forms of illegal discrimination, the Court finds that Defendant's argument is moot because Plaintiff has dropped her Title VII claim.[6] *See* Doc. No. 46 at 2 n.1.

---

[6] Defendant suggests that Plaintiff's Title VII claim is inseparable from her Rehabilitation Act claim with regard to compensation. (Doc. No. 48 at 6.) However, the two compensation allegations are distinct. Whereas Plaintiff alleged sex discrimination with regard to her *initial* position and resulting salary, her Rehabilitation Act claim is related to her subsequent assignments. *See* Doc. No. 46 at 32.

10

Defendant also argues that Plaintiff cannot prevail on her constructive discharge claim because other factors, including personal financial considerations, motivated her retirement. (Doc. No. 37 at 14-15; Doc. No. 48 at 6.) This argument mischaracterizes Plaintiff's testimony. Plaintiff stated in her deposition,

> The reason I retired was I was forced into retirement because, like I said, my classes were reduced. They didn't give me any accommodation, you know, that I'd asked for. And I just really felt being—you know, being disabled, I just really felt—you know, it affected me mentally. They didn't give me what I was supposed to get. And plus I didn't have a teaching assistant. I didn't have any of these accommodations. *And plus financially. Here I am I'm used to making all this money, you know, working full-time, research going; and all of a sudden I'm reduced to teaching two classes. Income is cut in half….* It was not my intent to retire, but they just didn't do what they were supposed to do. They didn't accommodate me. They cut my class. They cut my salary. They did these things to me. So that's why I was forced to retire.

Pendleton Dep. at 145:24-147:6 (emphasis added). As this testimony makes clear, Plaintiff's personal financial considerations motivating her retirement were directly related to the alleged discrimination. It was not simply a matter of "balancing of potential incomes between working and retiring," as Defendant asserts. *See* Doc. No. 37 at 14-15. Rather, Plaintiff testified that, because of the discriminatory adverse employment actions that she alleges in this case, her salary was reduced to the point that it did not make sense for her to continue working. Therefore, Defendant is not entitled to summary judgment on the basis of this testimony.

### B. ADA claim

The ADA requires employers to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee" unless doing so "would impose an undue hardship" to the employer. 42 U.S.C. § 12112(b)(5)(A). *Barber v. Nabors Drilling U.S.A., Inc.*, 130 F.3d 702, 706 (5th Cir.1997). To prevail on a claim under the ADA, the plaintiff must show: (1) that she could perform the essential functions of the job in spite of her disability, or (2) that a reasonable

accommodation of her disability would have enabled her to perform the essential functions of the job. *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1093 (5th Cir. 1996). Reasonable accommodations may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters and other similar accommodations." 42 U.S.C. § 12111(9)(B). Defendant argues that it is entitled to summary judgment on Plaintiff's ADA claims because her requests for accommodation—including a reserved golf cart and driver, permission to park on sidewalks, permission to use alternative building entrances, and a teaching assistant—were not reasonable. For the reasons explained below, summary judgment on Plaintiff's ADA claims is denied.

As a preliminary matter, Defendant argues that Plaintiff's claims related to her requests for a golf cart, driver, and permission to park on sidewalks are time-barred under the Rehabilitation Act's two-year statute of limitations. (Doc. No. 37 at 19.) Under Federal Rule of Civil Procedure 8(c), however, a statute of limitations defense constitutes an affirmative defense that "must be set forth in a responsive pleading or be deemed waived." *Funding Sys. Leasing Corp. v. Pugh*, 530 F.2d 91, 95 (5th Cir. 1976). Defendant did not set forth its statute of limitations defense in its Answer, and the Court denied Defendant's motion for leave to amend its Answer. *See* Doc. Nos. 26, 49. Therefore, Defendant has waived this defense and is not entitled to summary judgment.

During Plaintiff's employment, the office of the Dean of Engineering owned one golf cart. (Doc. No. 37 at 16 n. 61.) The University as a whole owned between 50 and 94 golf carts. *Id*. Dean Harris maintained a policy of allowing individuals to use the Dean's office golf cart on

a first-come, first-served basis, and Plaintiff had access to the Dean's office golf cart on the same terms as other employees. *Id*. at 16-17. Plaintiff requested that a golf cart be available for her use when she needed it to get around the campus. (Doc. No. 46 at 32-33.) She also requested that a driver be made available. *Id*. Plaintiff suggested that a student employee may have been able to serve as a driver. *Id*.

Defendant provides no support for its argument that a reserved golf cart was not a reasonable accommodation. The Court therefore declines to grant summary judgment on that question and focuses on Plaintiff's request for a driver. The Fifth Circuit has held that "an accommodation that would result in other employees having to work harder or longer is not required under the ADA." *Turco*, 101 F.3d at 1094. There remains a question of fact as to whether providing a driver would have caused any other employee to work harder or longer. Defendant has not proven that there were no University employees who could have added this task to their other responsibilities without extending their hours. Nor has Defendant refuted Plaintiff's assertion that unused work hours for students employed by the University could be used to provide Plaintiff with a driver. Because questions of material fact remain, the Court declines to grant summary judgment on this accommodation.

Next, Defendant denied Plaintiff's requests for permission to drive on pedestrian sidewalks and to park adjacent to University buildings. (Doc. No. 37 at 18-19.) Defendant argues that the disabled parking spots were sufficiently close to the buildings. *Id*. Defendant acknowledges that vendors were permitted to park adjacent to University buildings but maintains that Plaintiff's request to park there every day was unreasonable. *Id*. Defendant also notes that Plaintiff's requested accommodation was greater than that received by other employees with mobility impairments. *Id*. Once again, however, the question of whether this accommodation was

reasonable is properly left to the jury. Defendant has not shown that Plaintiff's request was unreasonable as a matter of law. As such, the Court declines to grant summary judgment.

Third, Defendant denied Plaintiff's request for permission to use alternative entrances to University buildings. Plaintiff requested permission to use the maintenance entrance to one building (since that entrance lacked steps) and the emergency exit of another. (Doc. No. 46 at 34.) Defendant argues that rekeying emergency exits would violate code and impact facility security. (Doc. No. 48 at 8.) Defendant further argues that using these alternative entrances were not necessary, since Plaintiff was able to perform her job for years without them. *Id*. Balancing Plaintiff's need for accommodation against the hardship they would impose on Defendant and assessing how essential these accommodations were to Plaintiff's job performance are tasks that are best left to the jury. Therefore, summary judgment is denied as to this issue.

Finally, Plaintiff requested a teaching assistant to write on the blackboard, set up and run PowerPoint presentations, and grade papers. Pendleton Dep. at 54:1-55:3. Defendant argues that grading papers is an essential function of teaching. Doc. No. 37 at 20; *see Turco*, 101 F.3d at 1094 ("The ADA does not require an employer to relieve an employee of any essential functions of his or her job"). Defendant further argues that there are multiple ways to present material to students, so Defendant was not required to accommodate Plaintiff's request for a teaching assistant to use the blackboard or PowerPoint presentations. *Id*. These are fact questions. As such, Defendant is not entitled to summary judgment.

Defendant argues that Plaintiff refused to engage with Defendant to find the best means of accommodating her disability. The ADA's regulations require both the employer and the employee to engage in an "interactive process" to craft a reasonable accommodation. 29 U.S.C. § 1630.2(o)(3). According to Defendant, Plaintiff's refusal to accept Defendant's accommodations

and insistence on being provided a reserved golf cart, driver, access to adjacent parking and alternative entrances to buildings, and a teaching assistant constitute a refusal to engage in the required process. (Doc. No. 37 at 20-21. This, too, is a fact question and is therefore left to the jury.

## IV. CONCLUSION

For the reasons set forth above, Defendant Prairie View A&M University's Motion for Summary Judgment (Doc. No. 37) is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 7th day of December, 2016.

_____
HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE